IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN DIRK WASSNER, M.D.,

     Plaintiff,

     vs.                        No. 1:13-CV-00954 MCA/SMV

CHRISTUS ST. VINCENT REGIONAL
MEDICAL CENTER, ALEX VALDEZ,
KEVIN GARRETT, BRENDA
STEWART, and PEARL MOHNKERN,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Amended Motion for Partial Dismissal Pursuant to Rule 12(b)(6) and For a More Definite Statement Pursuant to Rule 12(e)* [Doc. 36].  Having considered the parties' submissions, the relevant case law, and otherwise being fully advised in the premises, the Court will grant Defendants' motion.

## I.    BACKGROUND

The *Amended Complaint* alleges the following relevant facts.  Plaintiff, John Dirk Wassner, M.D., "was born on October 19, 1947.  His gender is male, and he is Jewish." [Doc. 33 at 3]  Plaintiff was employed by Defendant Christus St. Vincent Regional Medical Center (CSVRMC) as a trauma surgeon pursuant to a written contract of employment dated November 9, 2009.  [Doc. 33 at 4; see Doc. 1-4 Ex. D]  On October 15, 2011, Plaintiff accepted a $1,000,000 grant to CSVRMC from the Frank D. Gorham Jr. and Marie Kelly Gorham Charitable Foundation, which was "inspired by the

1

patriotism and professionalism of" Plaintiff.  [Doc. 33 at 5]  Three days later, on October

18, 2011, Plaintiff was suspended for two weeks based on three alleged instances of

misconduct that occurred on June 22, 2011, June 29, 2011, and September 26, 2011,

"well before the above-referenced grant to CSVRMC in Plaintiff's honor."  [Doc. 33 at 5]

On November 18, 2011, Plaintiff met with Defendant Kevin Garrett, former Chief

Medical Officer of CSVRMC, and Defendant Pearl Mohnkern, the Human Resources

Director of CSVRMC.  [Doc. 33 at 3, 6]  At this meeting, Plaintiff was given a

termination letter signed by Defendant Alex Valdez, the former Chief Executive Officer

of CSVRMC.  [Doc. 33 at 2, 6]  The termination letter explains that "[t]he reason for this

action is your continued infractions of a sexual harassment nature after you were warned

on June 23, 2011 by Brenda Stewart, and again on October 18th by letter under my

signature which also imposed a two week suspension of duty without pay for substantive

additional related violations."  [Doc. 1-2, Ex. A]  The termination letter further explains

as follows:

> Unfortunately, it has been confirmed that on Monday,
> Wednesday, November 8th, you created another disconcerting
> circumstance during hand-off rounds with fellow associates
> Angie Cline, Brenda Stewart, Johnette Serazio and Gloria
> Ortega Smith.  Ms. Cline described an embarrassing moment
> when she almost followed a male physician into a restroom.
> You stated, "you could have been a first assist on that one."
> Such repeated infractions place female co-workers into
> embarrassing situations related to sexual comments.  This
> cannot be tolerated as previously expressed.  This constitutes
> grounds for termination.

[Doc. 1-2, Ex. A]  Plaintiff's termination was effective on December 3, 2011.  Plaintiff

was replaced by the wife of Dr. William Dougherty, a non-Jewish female who is 20 years

younger than Plaintiff.  [Doc. 33 at 6]

On or about July 16, 2012, Plaintiff filed a Charge of Discrimination against CSVRMC, Mr. Valdez, Dr. Dougherty, Mr. Garrett, and Ms. Mohnkern with the New Mexico Department of Workforce Solutions, Labor Relations Division, Human Rights Bureau, alleging discrimination based on sex, religion, age, and retaliation.  [Doc. 31 at 7; Doc. 1-2 Ex. B]  On May 3, 2013, the Department of Workforce Solutions issued a Determination of No Probable Cause as to the Charge and informing Plaintiff of his right to appeal that Determination to the District Court.  [Doc. 33 at 7-8, Doc. 1-2 Ex. C]

On August 2, 2013, Plaintiff filed a Complaint in the First Judicial District of the State of New Mexico against CSVRMC, Mr. Valdez, Mr. Garrett, Brenda Stewart, Ms. Mohnkern and John Does 1-99.  [Doc. 1-1]  Defendants removed the case to this Court on the basis of federal question jurisdiction.  [Doc. 1]  Thereafter, Plaintiff filed a motion to file an amended complaint and Defendants filed a motion to dismiss and a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(b)(6) and 12(e). [See Docs. 27 and 28]  Magistrate Judge Vidmar denied Plaintiff's motion to file an amended complaint as moot because, pursuant to Fed. R. Civ. P. 15(a)(1) Plaintiff had "21 days from December 23, 2013 –when Defendants filed their motion under Rules 12(b) and 12(e)—to amend his complaint as a matter of course."  [Doc. 31 at 2]

On January 13, 2014, Plaintiff filed his *Amended Complaint For Employment Discrimination Pursuant to Title VII, The Age Discrimination in Employment Act, and the New Mexico Human Rights Act; Wrongful Termination and Retaliatory Discharge; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing;*

3

*and Violation of the New Mexico Whistleblower Protection Act* against CSVRMC, Mr.

Valdez, Mr. Garrett, Ms. Stewart, and Ms. Mohnkern[1] (hereinafter collectively referred to

as "Defendants").  [Doc. 33]  In light of Plaintiff's *Amended Complaint*, this Court

denied Defendants' motion to dismiss and motion for a more definite statement without

prejudice.  [Doc. 35]

 In his *Amended Complaint*, Plaintiff raises the following claims: (1) religion

and/or gender discrimination in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e-5(a) through (k) against CSVRMC; (2) religion and/or

gender discrimination in violation of  the New Mexico Human Rights Act ("NMHRA"),

NMSA 1978, § 28-1-7 through 28-1-15 against all Defendants; (3) retaliation in violation

of Title VII against CSVRMC; (4) age discrimination in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 through 634

against CSVRMC; (5) age discrimination in violation of NMHRA against all Defendants;

(6) wrongful termination and retaliatory discharge against all Defendants; (7) breach of

contract against CSVRMC; (7) breach of the implied covenant of good faith and fair

dealing against CSVRMC; and (8) violation of the New Mexico Whistleblower

Protection Act ("NMWPA"), NMSA 1978, § 10-16C-1 through 10-16c-6 against

CSVRMC.

 On January 24, 2014, Defendants filed *Defendants' Amended Motion for Partial

Dismissal Pursuant to Rule 12(b)(6) and For a More Definite Statement Pursuant to Rule

12(e)*.  [Doc. 36]  Defendants contend that: (1) Plaintiff's NMHRA claims against

---

[1] Plaintiff's *Amended Complaint* omits the claims against John Does 1-99.

Defendant Stewart must be dismissed for failure to exhaust administrative remedies; (2) Plaintiff's Title VII claim against the individual Defendants should be dismissed because lawsuits against individual supervisors are not permitted under Title VII; (3) Plaintiff's Title VII retaliation claim should be dismissed because Plaintiff did not engage in any protected activity; (4) Plaintiff's wrongful termination and retaliatory discharge claim must be dismissed because "only at-will employees may bring wrongful discharge/retaliation claims pursuant to public policy"; [Doc. 36 at 5]; (5) Plaintiff's request for emotional distress damages on his breach of contract and breach of the implied covenant of good faith and fair dealing claims must be dismissed because Plaintiff's employment contract did not contemplate emotional distress damages; (6) Plaintiff's breach of the implied covenant of good faith and fair dealing claim must be dismissed because Plaintiff's employment was terminated pursuant to an express term in his employment contract; and (9) Plaintiff's NMWPA claim must be dismissed because CSVRMC is not a public employer as defined by the Act.  [Doc. 36 at 1-6]

## II.    STANDARD

Under Fed. R. Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  Further, in order to withstand a rule 12(b)(6) motion, a

complaint must contain "enough facts to state a claim to relief that is plausible on its

face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted) (Iqbal).  If a plaintiff cannot

nudge the claims "across the line from conceivable to plausible," the complaint must be

dismissed.  Id. at 680.

     In handing down Twombly, the United States Supreme Court invalidated the

longstanding rule that a complaint should not be dismissed for failure to state a claim

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957).  The Conley standard has proved problematic over the years because it suggests

that "a wholly conclusory statement of claim would survive a motion to dismiss

whenever the pleadings left open the possibility that a plaintiff might later establish some

'set of [undisclosed] facts' to support recovery."  Twombly, 550 U.S. at 561 (quoting

Conley, 355 U.S. at 45-46).  As a result, defendants may be forced to bear the burden and

expense of discovery before they are afforded a real opportunity to seek the dismissal of

groundless claims, while plaintiffs may use the burdensome discovery process as

leverage to induce otherwise unjustified settlement of such groundless claims.  See

Twombly, 550 U.S. at 557-59.

     A complaint is now subject to dismissal under the new standard if it does not

"possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550

U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 556 U.S. at 678.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Id. at 678-79 (internal citations omitted).  Thus, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth" and then considering whether the factual allegations "plausibly suggest an entitlement to relief."  Id. at 681.  Accordingly, the Court begins by evaluating the elements of the pleaded cause of action, in order to determine whether the complaint states sufficient factual allegations to implicate a claim for relief.  See id. at 674.

## III.   DISCUSSION

### A.   *NMHRA Claims Against Ms. Stewart*

Defendants move to dismiss Plaintiff's NMHRA claims against Ms. Stewart due to Plaintiff's failure to exhaust his administrative remedies.  [Doc. 36 at 9]  Specifically,

Defendants point out that, although Plaintiff filed a Charge of Discrimination against CSVRMC, Mr. Valdez, Dr. Dougherty, Mr. Garrett and Ms. Mohnkern, he did not file a Charge of Discrimination against Ms. Stewart.  [Doc. 1-2, Exhibit B]  Plaintiff responds that, pursuant to Lobato v. New Mexico Env't Dep't, 267 P.3d 65 (N.M. 2011), the New Mexico Department of Workforce Solutions' Charge of Discrimination form is inadequate and misleading with respect to individuals and the remedy is to permit Plaintiff's claim against Ms. Stewart to go forward.  [Doc. 37 at 6-7]

"Unlike the Civil Rights Act, the NMHRA permits unlawful discrimination claims against individuals."  Lobato, 267 P.3d at 67; see Sonntag v. Shaw, 22 P.3d 1188, 1193 (N.M. 2001) (holding that individuals may be held liable under the NMHRA).  "The NMHRA creates a cause of action against individuals, which necessarily requires the naming of these individuals in the administrative complaint, and requires administrative exhaustion against these individuals as a prerequisite to judicial remedies."  Id. at 68; see also Sonntag, 22 P.3d at 1193 (holding that the plaintiff failed to exhaust her administrative remedies against an individual, because she failed to name the individual in her administrative complaint).  Despite the exhaustion requirement, "the NMHRD's official Charge of Discrimination form instructs filers to report only the employer or agency involved but does not instruct filers to report the 'person' involved."  Id.

In Lobato, the New Mexico Supreme Court addressed whether the NMHRD's official Charge of Discrimination form "fairly and adequately allows a claimant to exhaust administrative remedies and preserve the right to pursue judicial remedies for individual liability claims under the [NMHRA]."  Id. at 65.  In that case, the plaintiff filed

an NMHRD official Charge of Discrimination against his employer, but he failed to list any individual employees of his employer.  Id. at 66.  However, "[n]othing in the NMHRD Charge of Discrimination form instructed Plaintiff to add any identification of individual agency employees involved in the alleged discrimination."  Id.  After the plaintiff's administrative complaint had been processed to conclusion, he filed a Civil Rights complaint in the United States District Court for the District of New Mexico against his employer and multiple employees.  The defendants moved to dismiss the complaint based, in relevant part, on the plaintiff's failure to exhaust his administrative remedies against the individual defendants.  The United States District Court "denied the motion for those defendants identified by their job positions within the 'PARTICULARS' narrative on Plaintiff's Charge of Discrimination forms, and *sua sponte* certified" the question of whether the NMHRD form "provide[s] a fair and adequate opportunity to exhaust administrative remedies against individual actors under the NMHRA and the proper remedy, if any, to the New Mexico Supreme Court.  Id. at 66-67.

The New Mexico Supreme Court held that the NMHRD form was not only "inadequate to serve its statutory purpose" but also "affirmatively misleading."  Id. at 68. The Court observed that the form "creates a trap for unwary claimants to forfeit their statutory rights and judicial remedies."  Id.  Accordingly, the Court held that "the NHMRD's Charge of Discrimination form fails to provide a fair and adequate opportunity to exhaust administrative remedies against individual defendants as required by NMHRA."  Id.  With respect to the plaintiff's remedy, the Court balanced the harm to

9

both parties and determined that "barring Plaintiff's judicial remedy solely because he

followed explicit and misleading instructions in the NMHRD's official complaint form is

a far greater injustice than the less significant effect imposed on Defendants by the lack

of formal individual notice in the antecedent administrative proceedings." Id.  The Court

noted that the plaintiff had "relied on the administrative procedures he was instructed to

follow, and that reliance now threatens to deny him the statutory remedies to which he is

entitled." Id. at 69.  Additionally, "[b]ecause Plaintiff's suit [arose] out of the very

incidents reported in the NMHRD Charge of Discrimination forms, Defendants were

likely to have had at least constructive notice of their alleged involvement in these

allegations during any prior administrative proceedings." Id.  Therefore, "[b]alancing the

equities," the Court held "in these limited circumstances [that] the requisite exhaustion of

the NMHRA should not be required in order for Plaintiff to pursue his judicial remedies

under the statute." Id.

Although the NMHRA form was inadequate and misleading because it did not

instruct Plaintiff to list individual defendants, Plaintiff nonetheless listed "Alex Valdez,

CEO, William Dougherty M.D., Kevin Garrett M.D., CMO, Pearl Mohnkern, HR

Director" in his Charge of Discrimination.  [Doc. 1-2, Exhibit B]  Thus, unlike the

plaintiff in Lobato, Plaintiff was aware that he could list individual defendants in the

Charge of Discrimination.  Because Plaintiff was not affirmatively misled by the Charge

of Discrimination, the Court concludes that the equitable considerations present in Lobato

are not present in the instant case and that the balance of the equities do not excuse

Plaintiff's failure to exhaust his administrative remedies against Ms. Stewart.  See Parker,

et al. v. Lithia Motors, Inc., et al., No. 13-CV-1182 RB/GBW, Doc. 33 at 7 (D.N.M. July 2, 2014) (granting individual defendants' motion to dismiss under the NMHRA because "the equitable considerations present in Lobato are not present here" and "the holding in Lobato does not excuse the Plaintiffs' failure to identify Individual Defendants as parties in their Charge of Discrimination filed with the New Mexico Human Rights Bureau").

Plaintiff contends, however, that his NMHRA claims against Ms. Stewart should be permitted to go forward in light of Campos v. Las Cruces Nursing Ctr., 828 F. Supp. 2d 1256, 176-77 (D.N.M. 2011), which held that "[g]iven that under Title VII a person may not name a supervisor as a party in a charging instrument, but that a supervisor may be respondent under the NMHRA, the Supreme Court of New Mexico would likely recognize that complaining about a person in the text of a charge would be sufficient to name them as a respondent in the case."  Plaintiff's reliance on Campos is misplaced. First, Campos is a United States District court case that was decided two months before Lobato and, therefore, its persuasive value is limited.  Second, unlike the plaintiff in Campos, Plaintiff did not complain about Ms. Stewart in the text of his charge.  Indeed, Ms. Stewart is not referred to, either by name or position, anywhere in the NMHRA Charge of Discrimination.  Therefore, the holding in Campos is inapplicable to the present case.

Plaintiff failed to exhaust his administrative remedies against Ms. Stewart as required by the NMHRA and, as such, Defendants' motion to dismiss the NMHRA claims against Ms. Stewart will be granted.

B.      _Title VII Claims Against Individual Defendants_

Defendants move to dismiss Plaintiff's Title VII claims against Mr. Valdez, Mr. Garrett, Ms. Stewart and Ms. Mohnkern because "[r]elief granted under Title VII is against _employers_, not individual employees whose actions may constitute a violation of the Act."  [Doc. 36 at 10]  See Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1083 n.1 (10th Cir. 2007) ("Under long-standing circuit precedent, supervisors and other employees may not be held personally liable under Title VII.").  Plaintiff responds that listing the individual defendants in his request for relief on his Title VII claims was "a clerical error and should be corrected to show that the claim against Defendant CSVRMC only."  [Doc. 37 at 8]  Based on the foregoing, Defendants' motion to dismiss Plaintiff's Title VII claims against the individual defendants will be granted.

C.      _Title VII Retaliation Claim_

Defendants move to dismiss Plaintiff's Title VII retaliation claim because the _Amended Complaint_ fails to allege that Plaintiff engaged in protected activity.  [Doc. 36 at 10-11]  Under 42 U.S.C. § 2000e–3(a), it is unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]."  "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted).  "A plaintiff need not convince the jury

12

that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory." Hertz v. Luzenac America, Inc., 370 F.3d 1014, 1015-16 (10th Cir. 2004).

"In order to engage in protected opposition to discrimination, an employee must oppose an employment practice made unlawful by Title VII." Faragalla v. Douglas County Sch. Dist. RE 1, et al., 411 Fed. Appx. 140, 148 (10th Cir. 2011) (unpublished opinion).  "Thus an employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be 'protected opposition to discrimination' unless the basis for the alleged unfair treatment is some form of unlawful discrimination in violation of Title VII." Id.  Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Thus, a plaintiff engages in protected activity only if he or she opposes employment discrimination based on race, color, religion, sex, or national origin. See Faragalla, 411 Fed. Appx. at 148 (holding, *inter alia*,  that the plaintiff had not engaged in protected activity because "[n]one of these complaints . . . made any reference to Ms. Faragalla's race, religion, or national origin").

In the present case, the *Amended Complaint* alleges that:

> 42.    Plaintiff engaged in protected activity when he makes statements that Defendant CSVRMC was not prepared to be a Level II trauma center and as a result of Defendant CSVRMC's retaliatory acts, Plaintiff suffered a material adverse employment action.

> 43.     Defendant CSVRMC has intentionally and maliciously
> engaged in unlawful employment practices in violation of
> Title VII by terminating Plaintiff's employment in retaliation
> for his comments regarding CSVRMC's not being prepared
> to attain Level II status as a trauma center and then fulfill its
> obligations.

[Doc. 33 at 10-11]  Plaintiff does not allege that he complained about employment

discrimination based on a protected category (i.e. race, color, religion, sex, or national

origin), rather he alleges that he complained about CSVRMC's preparedness to become a

Level II trauma center.  Plaintiff's statements do not constitute protected opposition to

discrimination under Title VII and, therefore, Defendants' motion to dismiss Plaintiff's

Title VII retaliation claim will be granted.

### D.      *Wrongful Termination and Retaliatory Discharge*

Defendants contend that Plaintiff's claim for wrongful termination and retaliatory

discharge should be dismissed because Plaintiff's "employment contract bars a claim for

wrongful/retaliatory termination in violation of New Mexico public policy."  [Doc. 36 at

12]  Plaintiff responds that his termination in retaliation for his comments regarding

CSVRMC's preparedness to become a Level II trauma center violate New Mexico public

policy because they pertain to "public health and safety and the proper degree of medical

care to patients."  [Doc. 37 at 10]  Plaintiff further responds that his employment contract

"is a *de facto* at will contract" and, therefore, his wrongful termination and retaliatory

discharge claim is not barred.  [Id.]

"The tort of retaliatory discharge was first adopted in New Mexico by the Court of

Appeals as a narrow exception to the rule that an at-will employee may be discharged

with or without cause." Shovelin v. Cent. New Mexico Elec. Coop., Inc., 850 P.2d 996, 1006 (N.M. 1993). "The express reason for recognizing this tort, and thus modifying the terminable at-will rule, was 'the need to encourage job security' for those employees not protected from wrongful discharge by an employment contract." Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp., 738 P.2d 513, 515 (N.M. 1987). However, "if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded by the retaliatory discharge action is unnecessary and inapplicable." Id. (declining "to extend the tort of retaliatory discharge beyond the limited context in which it has been recognized"). Thus, the right to bring a retaliatory discharge claim "is limited to at-will employees." Weise v. Washington Tru Solutions, LLC, 192 P.3d 1244, 1254 (N.M. 2008) (affirming the district court's grant of summary judgment on the plaintiff's retaliatory discharge claim because the plaintiff was not an at-will employee).

It is undisputed that Plaintiff was protected by an express employment contract. [See Doc. 1-4, Ex. D] Nonetheless, Plaintiff contends that his "employment contract is a *de facto* at will contract" because it "did not provide any protection to Plaintiff from termination without just cause." [Doc. 37 at 100] In support of this contention, Plaintiff relies on Godwin v. Rogue Valley Youth Corr. Facility, No. 1:12-cv-00478-CL, 2013 WL 3712413 (D. Or. July 12, 2013) (unpublished opinion), which notes that "[u]nder Oregon state law, as a general rule, most employment contracts are de facto at-will arrangement that may be terminated by either party at any time, for any reason." However, Plaintiff's employment contract is not governed by Oregon state law, it is

governed by New Mexico state law.  "New Mexico follows the general rule that employment is terminable at will by either the employee or the employer, absent an express contract to the contrary." Zarr v. Washington Tru Solutions, LLC, 208 P.3d 919, 923 (N.M. App. 2009) (internal quotation marks and citation omitted); see also Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 P.3d 333, 341 (N.M. 2002) ("In an at-will employment relationship, both the employer and the employee have the right to terminate the employment relationship at any time and for any reason.").  In this case, the parties entered into an express employment contract that limited CSVRMC's ability to terminate Plaintiff's employment at any time for any reason.  Article 5 of the Contract, Section 5.3 provides, in relevant part, as follows:

> Termination.  This Agreement may be terminated as follows:
>
> (a)    Termination by Mutual Consent.  This Agreement may be terminated at any time by mutual written agreement of the parties.
>
> (b)    Optional Termination.  This Agreement may be terminated by either party at any time, with or without cause, by providing the other party with ninety (90) days prior written notice.
>
> (c)    Termination for Breach.  Either party may terminate this Agreement immediately for breach of any material term or condition of this Agreement by the other party (the "Breaching Party") fifteen (15) business days after written notice thereof is received by the Breaching Party.  The party claiming the right to terminate under this Subsection 5.3(c) shall set forth in the notice the facts underlying its claim that the other party is in breach of the Agreement.  Remedy of such breach within fifteen (15) business days of the receipt of such notice shall continue the Agreement in effect for the remaining term, subject to any other rights of termination contained in this Article 5 or elsewhere in this Agreement.

[Doc. 1-4 at 5]  Although Plaintiff could be terminated "with our without cause" under Section 5.3(b) of the contract, he was entitled to "ninety (90) days prior written notice." Regardless, Plaintiff's employment was not terminated under Section 5.3(b), but rather, according to CSVRMC's November 18, 2011 termination letter, Plaintiff's employment was terminated pursuant to Section 5.3(c) for breach of the employment agreement.  [Id.; see Doc. 1-2]  Because Plaintiff's employment was governed by the terms of an express employment contract, the Court concludes that Plaintiff was not an at-will employee.  As such, Defendants' motion to dismiss Plaintiff's retaliatory discharge claim will be granted.

E.      *Emotional Distress Damages on Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims*

Defendants next move to dismiss Plaintiff's request for emotional distress damages on Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims, because Plaintiff has failed to demonstrate that such damages were contemplated by the parties at the time the contract was made.  [Doc. 36 at 13]  Plaintiff responds that emotional distress damages were contemplated by the parties, as alleged in his *Amended Complaint*.  [Doc. 37 at 11-12; see Doc. 33 at 16]

Under New Mexico law, "damages for emotional distress are not recoverable in an action for breach of an employment contract, whether express or implied, in the absence of a showing that the parties contemplated such damages at the time the contract was made."  Silva, 738 P.3d at 514.  The New Mexico Court of Appeals has observed that if it "were to allow emotional distress awards in a garden-variety employment contract case,

17

[it] would undercut the fundamental limitation on awards for contractual breach; namely, what is reasonably within the contemplation of the parties to the contract." Martinez v. N. Rio Arriba Elec. Co-op., Inc., 51 P.3d 1164, 1169-70 (N.M. App. 2002).

Plaintiff's employment contract does not explicitly contemplate emotional distress damages.  However, liability for emotional distress damages nonetheless may be allowed:

> Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered.

Flores v. Baca, 871 P.2d 962, 932 (N.M. 1994) (internal quotation marks and citation omitted.)  For example, in Flores the New Mexico Supreme Court held that emotional distress damages are available for the breach of a funeral services contract, because consolation of the deceased's family members is the aim of such a contract.  Id.  In contrast, in Martinez, the New Mexico Court of Appeals held that an employment contract did not contemplate emotional distress damages, even though the employee derived peace of mind from his unused sick leave.  Martinez, 51 P.3d at 1169-70.  Presumably, this is because employment contracts "principally serve an economic purpose."  Lindberg v. New Mexico Dep't of Transp., et al., 05-CV-284 MCA/DJS, Doc. No. 65 at 42 (D. N.M. August 2, 2006) (quoting Francis v. Lee Enters., Inc., 971 P.2d 707, 714 (Haw. 1999)) (rendering summary judgment on the plaintiff's request for emotional distress damages on her breach of contract claim because the plaintiff failed to

adduce evidence that emotional distress damages were contemplated by the parties).

In his *Amended Complaint*, Plaintiff alleged the following:

> 72.     At the time Plaintiff and Defendant CSVRMC entered into the Contract, as alleged hereinabove, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Plaintiff would suffer present and future loss of earnings as a foreseeable and probable result thereof.  Further, it was known and understood, and within the reasonable contemplation of the parties, that in the event of a breach, Plaintiff would suffer present and future emotional distress as a foreseeable and probable result thereof, and such distress is accounted for in the concept of constitutional stigma.

[Doc. 33 at 16]  Although Plaintiff alleges that emotional distress damages were "within the reasonable contemplation of the parties," he has failed to allege any facts in support of this allegation.  Such conclusory allegations, unsupported by facts, are insufficient to survive the Twombly/Iqbal standard.  See Hunt v. Ctr. Consol. Sch. Dist., 951 F. Supp. 2d 1136, 1238 (D. N.M. 2013) (dismissing the plaintiffs' request for emotional distress damages on their breach of contract claim because the complaint's "formulaic recitation of the elements of a cause of action for emotional damages for breach of contract will not do" under Iqbal) (internal quotation marks omitted).

Plaintiff claims, however, that the *Amended Complaint* sufficiently states a claim for emotional distress damages pursuant to Keller v. Bd. of Educ. of the City of Albuquerque, 182 F.2d 1148 (D. N.M. 2001).  In Keller, as in the present case, the plaintiff's employment contract was silent on the question of whether the parties' contemplated emotional distress damages.  To establish that the parties contemplated such damages at the time the contract was made, Plaintiff offered the affidavit testimony

of Dr. Rosalie Perea, who discussed "the Employee Assistance Program, which addresses the emotional distress employees experience during demotions, reassignments, and terminations." Id. at 1161.  In light of this evidence, the Court held that "whether the parties foresaw, contemplated, or expected emotional distress damages when Plaintiff signed her contract remains a genuine issue of material fact, rendering summary judgment inappropriate at this juncture." Id. at 1161-62.  Plaintiff points out that his employment contract "provides for a 'Wellness Program' regarding health assessment and educational classes for employees (Doc. 1-6, p.1) and insurance coverage regarding employees' mental health (Doc. 1-5, p.10)" and, therefore, dismissal is inappropriate.  The Court disagrees.  The Court concludes that the Wellness Program and mental health coverage are comparable to the payment for unused sick leave in Martinez, 51 P.3d at 1169-70, in which the Court of Appeals cautioned that courts should "not let the rare exception illustrated in Flores to swallow the general rule." Id. at 1170.  Thus, the existence of the Wellness Program and mental health coverage does not defeat the general rule that employment contracts "principally serve an economic purpose." Lindberg, , Doc. No. 65 at 42 (internal quotation marks and citation omitted). Accordingly, Defendants' motion to dismiss the emotional distress damages on Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims will be granted.

F.       *Breach of the Implied Covenant of Good Faith and Fair Dealing\*

Defendants contend that Plaintiff's breach of the implied covenant of good faith and fair dealing claim should be dismissed because Plaintiff's employment was

terminated pursuant to an express term in his employment contract.  [Doc. 36 at 14]

Plaintiff responds that CSVRMC breached the implied covenant of good faith and fair

dealing because it "prevented Plaintiff from performing under his employment contract

with CSVRMC by suspending Plaintiff without investigation and without just cause,

terminating Plaintiff's employment without investigation and without progressive

discipline . . . and interfered with Plaintiff's potential employment with the Los Alamos

Medical Center."  [Doc. 37 at 13]

      "Whether express or not, every contract in New Mexico imposes the duty of good

faith and fair dealing upon the parties in the performance and enforcement of the

contract."  Continental Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 82 (N.M.

1993).  "The breach of this covenant requires a showing of bad faith or that one party

wrongfully and intentionally used the contract to the detriment of the other party."  Id.

"Although negligent conduct is not sufficient to constitute a breach of the covenant . . .

affronts where the breaching party is consciously aware of, and proceeds with deliberate

disregard for, the potential harm to the other party are sufficient."  Jaynes v. Strong-

Thorne Mortuary, Inc., 954 P.2d 45, 49 (N.M. 1998) (citation omitted).  "The implied

covenant is aimed at making effective the agreement's promises.  Thus, it is breached

only when a party seeks to prevent the contract's performance or to withhold its benefits

from the other party."  Sanders v. FedEx Ground Package System, Inc., 188 P.3d 1200,

1203 (N.M. 2008) (internal quotation marks and citation omitted).  "Importantly, the

implied covenant of good faith and fair dealing cannot be used to overcome or negate an

express term contained within a contract."  Id.

The *Amended Complaint* alleges the following facts in support of Plaintiff's

breach of the implied covenant of good faith and fair dealing claim:

> 75.    Defendant CSVRMC has had policies and procedures
> in place during the term of Plaintiff's employment which
> require that CSVRMC comply with state and federal laws and
> with its own policies and procedures.
>
> 76.    Plaintiff relied upon Defendant CSVRMC's
> compliance with its internal policies and procedures,
> including those related to investigation of claims, grievances,
> collegial intervention, counseling and providing Plaintiff an
> opportunity to be heard.
>
> 77.    From 2011 to present, Defendant CSVRMC, through
> its individual supervisors and/or agents, has repeatedly
> breached the implied covenant of good faith and fair dealing
> by failing to follow its policies and procedures, by suspending
> Plaintiff without investigation and without just cause, by
> terminating his employment without investigation and
> without progressive discipline, by making misrepresentations
> of material fact regarding Plaintiff's suspension and
> termination, and by failing to provide Plaintiff with
> employment where he would not be subjected to status-based
> discrimination and to retaliation for truthfully commenting on
> upon a matter of public concern.  Furthermore, Defendant
> Valdez made false allegations regarding Plaintiff to one or
> more individuals employed at the Los Alamos Medical
> Center in a bad-faith attempt to discourage that medical
> center from employing Plaintiff.

[Doc. 33 at 17]

Defendants terminated Plaintiff's employment pursuant to the express terms of

Section 5(c) of the employment contract.  [See Doc. 1-2, Ex. A]  Nothing in this section

entitles Plaintiff to progressive discipline, investigation, collegial intervention, or

counseling prior to termination.  Furthermore, Plaintiff does not allege that Defendants

exercised their rights under Section 5(c) in bad-faith or with conscious awareness of and

deliberate indifference to the harm to Plaintiff.  With respect to Plaintiff's allegations regarding CSVRMC's bad-faith attempt to discourage the Los Alamos Medical Center from hiring Plaintiff, the Court notes that that there is nothing implicit or explicit in Plaintiff's employment contract that purports to limit CSVRMC's contact with subsequent prospective employers of Plaintiff.  Because the *Amended Complaint* fails to state a plausible claim for relief for breach of the implied covenant of good faith and fair dealing, Defendants' motion to dismiss this claim will be granted.

G.    *New Mexico Whistleblower Protection Act*

Defendants move to dismiss Plaintiff's Whistleblower Protection Act claim, because Plaintiff was not a "public employee" and CSVRMC was not a "public employer" as defined by NMSA 1978, § 10-16-C-2.  [Doc. 36 at 15]  Plaintiff responds that CSVRMC is a public entity because it receives state funding under the New Mexico Trauma System Fund Authority Act, NMSA 1978, § 24-10E-1 to 24-10E-7, and is regulated by the New Mexico Department of Health.  [Doc. 37 at 14]

On September 18, 2014, the parties filed a *Joint Stipulation of Dismissal* of Plaintiff's Whistleblower Protection Act claim under Fed. R. Civ. P. 41(a)(1)(A)(ii). [Doc. 66]  Because Plaintiff's Whistleblower Protection Act claim has been dismissed, the Court need not address this issue.

**IV.    CONCLUSION**

For the foregoing reasons, *Defendants' Amended Motion for Partial Dismissal Pursuant to Rule 12(b)(6) and For a More Definite Statement Pursuant to Rule 12(e)* [Doc. 36] will be granted.

**IT IS THEREFORE, ORDERED** that *Defendants' Amended Motion for Partial Dismissal Pursuant to Rule 12(b)(6) and For a More Definite Statement Pursuant to Rule 12(e)* [Doc. 36] is **GRANTED**.

**SO ORDERED** this 29th day of September, 2014, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
Chief United States District Judge